CHICAGO—FIRST DISTRICT—FEBRUARY, 1915.   499

Duggan v. Wells Bros. Co., 191 Ill. App. 499.

CHARLES L. MAHONY and FRANK L. KRIETE, for appellant; W. W. GURLEY and J. R. GUILLIAMS, of counsel.

BROWN, BROWN & BROWN, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

### Abstract of the Decision.

DAMAGES, § 124*—*amount of verdict for broken leg and permanent injuries.* Where plaintiff sustained a fracture of the fibula of his left leg and other injuries through a fall from a street car which he was attempting to board when it started out with a jerk, and his leg was in a cast for two months and it appeared that he suffered great pain, and medical experts testified as to the accident and permanent character of the injuries, to his leg, *held,* under the evidence, a verdict for $1,625 was not excessive.

Pat Duggan, Plaintiff in Error, v. Wells Brothers Company, Defendant in Error.

Gen. No. 19,319.   (Not to be reported in full.)

Error to the Superior Court of Cook county; the Hon. HUGO PAM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Reversed and remanded. Opinion filed February 24, 1915

### Statement of the Case.

Action by Pat Duggan against Wells Brothers Company for personal injuries received while employed in constructing a building. From a judgment on the verdict against plaintiff in favor of defendant, plaintiff brings error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

500     APPELLATE COURTS OF ILLINOIS.

Duggan v. Wells Bros. Co., 191 Ill. App. 499.

Defendant was engaged in the construction of a building and at the time of the accident was making a trench or ditch some six or seven feet wide and sixteen feet deep. The sides of the trench were shored with perpendicular planks which were held in place by cross-timbers or drums. The material was hoisted from the trench by means of a bucket attached to a rope suspended from a windlass.

On the day of the accident and for some days prior thereto, plaintiff had been working on concrete work near the trench. At the close of the day's work on concrete he was directed by his foreman to work overtime in the trench, and was told where he could get wading boots. This was the first excavating work he had done on this building. About seven-thirty o'clock, with a fellow-workman, Conroy, plaintiff Duggan came to the trench, and his foreman said: ''Boys, let's go down, and let's hurry up with the stuff.'' Duggan and Conroy thereupon climbed down into the trench on the drums, and Conroy, who was to dig, went into the section next south of the one in which the bucket was let down. As Conroy dug the clay he passed it between the drums to Duggan, who placed it in the bucket. When the bucket was filled Duggan signaled to the men above to hoist it. The section in which Duggan worked contained water a foot in depth, and there was a hole in the bottom where the water was about three feet deep. The bucket stood in the water while it was being filled, and not being watertight, water drained from it as it was hoisted. The easterly side of the section in which Duggan worked was partially covered with the temporary platform, there being a space of two and one-half feet square to let the bucket through, and spaces between the planks of three or four inches. The part near the western bank of the trench was uncovered.

One bucket had been filled with clay, and as it was being hoisted, Duggan stepped back towards the western

bank to escape the water falling from the bucket. While waiting for the bucket to be dumped, Duggan reached for a floating piece of board to put under his feet. At that point of time a hard object from above fell on his head and rendered him temporarily unconscious. Conroy heard his cry, and, with the assistance of the men above, lifted him out of the trench. Blood was flowing down his face from a cut in his head. He was taken to a physician's office and it was found that his skull was fractured.

No one saw the object which fell upon Duggan. But while he was in the trench the defendant moved a thirty foot steel girder by means of a derrick over the place where he was working. The girder had laid at the base of a brick wall, and was covered with broken brick and other debris. While the girder was being hoisted and moved over the windlass, one end of it struck an upright column with sufficient force to jar the ground. Loose brick and other debris were scattered along the sloping sides of the trench in a position to be knocked or pushed into the trench. Men handling the derrick, and others, who were putting electric lights into the trench, were passing along the sides of the trench at the time of the accident.

The negligence averred in four counts of the declaration in various forms was that the defendant failed to cover or protect the trench properly to prevent the loose stones and brick along the trench and over it from being brushed or shoved or dropped into the trench where plaintiff was working.

McCaskill & McCaskill, for plaintiff in eror.

F. J. Canty and P. L. McArdle, for defendant in error; J. C. M. Clow, of counsel.

Mr. Justice Smith delivered the opinion of the court.

Duggan v. Wells Bros. Co., 191 Ill. App. 499.

## Abstract of the Decision.

1. INSTRUCTIONS, § 150*—*propriety of limitation of number.* The practice of tendering to a trial court a large number of instructions is to be condemned by every sound canon of legal ethics pertaining to the trial of causes, since it tends to mislead the jury and to produce unjust results and to inject errors into the record, imposing an unnecessary burden on trial and reviewing courts.

2. NEGLIGENCE, § 187*—*sufficiency of circumstantial evidence to establish.* In an action for a fracture of the skull sustained by plaintiff, where the evidence as to what fell upon and injured him was wholly circumstantial, but there could be no doubt that a brick or some material did fall upon him from above, and from all the facts and circumstances shown by the evidence it was a fair and reasonable inference that the object would not have fallen upon him if there had been some guard around the edge of the trench to prevent loose material from being knocked or shoved into the trench by other workmen who were at work around the trench in which the plaintiff was working under orders from the defendant, or if the trench had been covered with planks, there being no such guards or covering and plaintiff not being in a position to know how extensive the work might be carried on above him, or whether any work would be carried on while he was in the excavation which would affect his safety or expose him to peril from above, *held* that a verdict in favor of the defendant was manifestly against the evidence, since defendant knew all the facts and controlled the operations above plaintiff and, if there was danger of obstacles falling upon the plaintiff as result of the operations above, it was the duty of the defendant, in the exercise of ordinary care for the plaintiff, to discontinue such work or to guard plaintiff against such danger, the neglect on the part of the defendant to discharge this duty being shown by the evidence.

3. MASTER AND SERVANT, § 137*—*what degree of care required of employer in building construction.* In an action by an employee for personal injuries received while working upon the construction of a building, *held* erroneous to instruct the jury that where a servant works at a particular place under orders from his superior, the master is not bound to take more care of the servant than the servant is bound to take of himself.

4. MASTER AND SERVANT, § 137*—*rule as to safe place to work as applied to building construction.* In an action for personal injuries by an employee engaged in constructing a building, an instruction that the jury might find for the defendant if they find that the

. *See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

inferences in favor of a pure accident are reasonable and logical, whether such inferences were supported by a preponderance of the evidence or not, *held* erroneous, since it was the duty of the defendant to exercise reasonable care to provide the plaintiff with a reasonably safe place in which to work, the defendant having ordered the plaintiff to work in the trench and the work which plaintiff was doing in the trench not creating any danger or making any changes in the risk of plaintiff's work as it progressed.

5.    MASTER AND SERVANT, § 137*—*when safe place to work rule applies to building construction.*    An instruction to the jury that the general rule of law which ordinarily obliges the master to exercise ordinary care to furnish a servant with a reasonably safe place in which to work does not apply in cases where the work the servant is employed to do is in connection with construction and demolition of buildings, if of such a nature that the character of the surroundings and situation is continually changing, *held* misleading as applied to the evidence in the case.

6.    MASTER AND SERVANT, § 410*—*where negligent order immaterial.* In an action to recover for personal injuries received by an employee in connection with the construction of a building, where the negligence averred in certain counts of the declaration was the failure of the defendant to place any covering or protection over an excavation to prevent loose stone and other material being knocked or pushed or dropped into it while the plaintiff was working therein, *held* that the court erred in instructing the jury that under such counts of the declaration plaintiff must prove a negligent order to entitle him to recover.